ESTATE OF EDWARD A. LANGENBACH, DECEASED, THE FIRST NATIONAL BANK OF CANTON, EXECUTOR AND TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100492. Promulgated March 11, 1942.

*John G. Ketterer, Esq.*, for the petitioner.
*W. W. Keer, Esq.*, for the respondent.

OPINION.

TURNER: The petitioner, relying particularly on *Commissioner* v. *Bonfils Trust*, 115 Fed. (2d) 788, contends that in determining net income 25 percent of the capital gains realized during the taxable years is deductible under section 162 (a) of the Revenue Acts of 1934

and 1936 [1] as gross income "permanently set aside" for charitable purposes. The respondent concedes that under Ohio law the capital gains became a part of the trust corpus, but contends that on the facts here *Boston Safe Deposit & Trust Co. et al., Executors*, 26 B. T. A. 486; affd., 66 Fed. (2d) 77, is controlling, and no part of capital gains may be said to have been "permanently set aside" for charitable purposes within the meaning of the statute.

Petitioner interprets the will to say that upon the death of Rosa Langenbach the estate is to be divided into halves, one of which is to pass under her will, otherwise to her relatives, while the other half is to be further divided into two equal parts, one such part, or 25 percent of the whole estate, to be used in paying specific legacies, and the remaining part, or 25 percent of the whole, to go to charity. On brief, it is stated: "Of great significance is the provision following the bequests of the specific legacies for the testator there provided that if one fourth of the corpus of his estate was not sufficient to pay the legacies in full, *then the specific bequests were to be ratably abated or diminished* in certain proportions. There was to be no diminution of the amount going to charity. We submit that the testator could not have been more specific and more clear in giving expression to an intention that 25 percent of the corpus of his estate was to go for charitable purposes." The petitioner argues that the probability of invading the trust corpus to supply support, comfort, and maintenance for Rosa Langenbach is too remote to be of any moment, *Commissioner* v. *Bonfils Trust, supra*, and, since under Ohio law the capital gains in question became part of the trust corpus, the conclusion is inescapable that in each of the years before us 25 percent of the capital gains realized must be regarded as having "been permanently set aside" for charitable purposes within the meaning of the statute.

A major difficulty with the petitioner's claim and the argument thereon is that it is predicated upon an erroneous interpretation or impression of the terms of the will. Under the will the trustee is authorized and empowered to pay to Rosa Langenbach such sum or sums as it deems necessary or proper "to provide for her suitable support, comfort and maintenance, should her income from this or from other sources prove, in the judgment of the trustee, inadequate

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit.

for such purposes." The trustee is also authorized and empowered to pay to Rosa Langenbach from the principal of the trust estate $25,000 per annum to be used by her for any charitable purpose or for the support and maintenance of relatives as she in her discretion determines. Upon her death the trust estate remaining is to be divided into two equal parts, one of which is to pass according to the terms of her will, otherwise to relatives, while the remaining one-half is to be applied in the payment of specific bequests to the decedent's brothers and sisters. If such remaining one-half of the trust estate is insufficient to pay the said legacies, then the legacies are to be ratably abated or diminished, in which case no amount goes to charity. If, however, the said remaining one-half of the trust estate is more than sufficient to pay such legacies, then the "over-plus" is to be divided in two equal shares, one of which is to go to the decedent's brothers and sisters and the other for charitable purposes as specified.

It is apparent therefore that we may not without qualifications say that any part or percentage of the trust corpus has been permanently set aside or will ever be used for charitable purposes. Before that may be said a number of contingencies and conditions must be met. The petitioner, due possibly to its erroneous reading of the will, deals with only one of those contingencies, namely, the likelihood or probability of invasion of the trust corpus for the purpose of providing for the support, comfort, and maintenance of Rosa Langenbach, and assumes that except for that contingency 25 percent of the estate is, under the terms of the will, definitely marked for charity. If that were so, we might be able to conclude, as the petitioner contends, that the probability of invading corpus for that purpose is so remote that *Commissioner* v. *Bonfils Trust, supra,* is controlling, and that the capital gains realized for 1935 and 1936 are to the extent of the 25 percent thereof permanently set aside for charitable purposes. Here, however, the trust corpus is not only subject to the charge, probable or improbable, for the support, comfort, and maintenance of Rosa Langenbach, but so long as she lives is also subject to a charge of $25,000 per annum to be used in her discretion for charity or the support of relatives and at the time of her death specific bequests aggregating $100,000 must first be paid from that one-half of the corpus remaining and out of which the payments for charitable purposes, if any, are to be made. It can not be said before her death therefore what, if any, part or percentage of the estate will ever be paid or used for charitable purposes. We are not unmindful of the fact that the estate did not depreciate in value from September 8, 1934, the date of decedent's death, to December 31, 1936, and had Rosa Langenbach died on the latter date, for instance, a substantial part of the estate, an amount, in fact, approaching 25 percent of the whole estate, would have gone to charity. Rosa Langenbach did not

die on that date, however, but was still living at the time of the hearing, and so long as she lives the contingencies affecting and controlling the payment for charitable purposes can not be resolved or determined and until her death it can not be said that any part of the gains here in question has been permanently set aside for such purposes. In our opinion, the rule pronounced in *Commissioner* v. *Bonfils Trust, supra*, is not applicable to a case such as we have here, but, to the contrary, the reasoning of *Boston Safe Deposit & Trust Co.* v. *Commissioner, supra*, is in point. We accordingly sustain respondent's contention that petitioner is not entitled for either of the taxable years 1935 or 1936 to deduct any portion of the capital gains realized in those years as having been permanently set aside for charitable purposes within the meaning of section 162 (a), *supra*.

With respect to the issues involving the bad debt deductions, we think the petitioner's contentions must be sustained. The facts show that petitioner was required to make good the decedent's guaranty on the four notes and without any extended discussion of the facts we think it will suffice to say that the record convinces us that the petitioner properly ascertained the debts to be worthless when the notes were paid off. We accordingly hold that, except for the collateral received on the Danford note, petitioner is entitled to the deductions claimed.

The parties have stipulated that for 1935 and 1936 there should be excluded from the income of the petitioner the respective amounts of $435 and $180, said amounts representing the reduction of decedent's liability as guarantor or endorser of notes of Mercy Hospital, Canton, Ohio; further that for 1935 there should be excluded from petitioner's income the sum of $225 representing the excess of decedent's liability as guarantor or endorser on the notes of Kenneth Miller over the appraised value of the estimated recovery on said note.

*Decision will be entered under Rule 50.*